UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 08-60537-CIV-JORDAN/MCALILEY

GENERAL DEFENSE CORP., a Florida corporation,

        Plaintiff,

v.

PAUL RESTORICK, a foreign national and citizen of the United Kingdom, and MIL TEC MARKETING, U.K., a foreign company located in the United Kingdom,

        Defendants.        /

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants, PAUL RESTORICK and MIL TEC MARKETING, U.K., ("Defendants"), by and through their undersigned counsel and pursuant to Rules 8, 12, and 13 of the Federal Rules of Civil Procedure, and in response to the Complaint filed against them by plaintiff, GENERAL DEFENSE CORP. ("Plaintiff") in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and assigned case number 08-06762-09, which case has been removed to this Court, avers as follows:

### Jurisdiction and Parties[1]

1.     Admitted.

2.     Defendants admit that Plaintiff is a Florida corporation with its principal office located in Fort Lauderdale, Broward County, Florida. Defendants lack knowledge or

---

[1] For the sake of simplicity and for purposes of answering the allegations contained in the complaint, Defendants have adopted the format and numbering of the Complaint.

Case 0:08-cv-60537-AJ  Document 2  Entered on FLSD Docket 04/16/2008  Page 2 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

information sufficient to form a belief about the truth of the remainder of this allegation and therefore, the same is denied, with strict proof demanded thereof.

3. Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore, the same is denied, with strict proof demanded thereof.

4. Defendants admit that Paul Restorick is a citizen of Great Britain. Defendants deny the remainder of this allegation and demand strict proof thereof.

5. Admitted.

6. Defendants admit that they are engaged in a business similar to that described by this allegation, however, deny the allegation and demand strict proof thereof.

7. Defendants admit that defendant Mil Tec Marketing is an unincorporated business located in the United Kingdom which is owned and controlled by Mr. Restorick. Defendants deny the remainder of this allegation and demand strict proof thereof.

8. Defendants admit that Mil Tec[2] is engaged in the business of supplying military, police and private establishments with various items. Defendants deny the remainder of this allegation and demand strict proof thereof.

9. Denied, with strict proof demanded thereof.

10. Denied, with strict proof demanded thereof.

11. Defendants admit that venue is appropriate in Broward County, Florida. Defendants deny the remainder of this allegation and demand strict proof thereof.

## Facts

12. Denied, the referenced documents speak for themselves.

---

[2] Defendant denies that Mil Tec is the alter-ego of Mr. Restorick as is suggested in footnote 1 of the complaint.

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

13. Admitted.

14. Denied, with strict proof demanded thereof.

15. Denied, with strict proof demanded thereof.

16. Denied, with strict proof demanded thereof.

17. Denied, the referenced documents speak for themselves.

18. Denied, the referenced documents speak for themselves.

19. Defendants admit that they informed Plaintiff that its Purchase Order was not acceptable. Defendants deny the remainder of this allegation and demand strict proof thereof.

20. Denied, with strict proof demanded thereof.

21. Denied, with strict proof demanded thereof.

22. Denied, with strict proof demanded thereof.

23. Denied, the referenced documents speak for themselves.

24. Defendants admit that Plaintiff transferred funds to Defendants pursuant to the parties' agreement. Defendants deny the remainder of this allegation and demand strict proof thereof.

## Count I Against Restorick and Mil Tec
### (Fraud in The Inducement)

25. Defendants re-allege and incorporate by reference their response to paragraphs 1 through 24 as though fully set forth herein.

26. Denied, with strict proof demanded thereof.

27. Denied, with strict proof demanded thereof.

28. Denied, with strict proof demanded thereof.

29. Denied, with strict proof demanded thereof.

-3-

RICHMAN GREER, P.A.

Miami • West Palm Beach

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

30. Denied, with strict proof demanded thereof.

31. Denied, with strict proof demanded thereof.

32. Denied, with strict proof demanded thereof.

33. Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore, the same is denied, with strict proof demanded thereof.

34. Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore, the same is denied, with strict proof demanded thereof.

35. Denied, with strict proof demanded thereof.

### Count II, In the Alternative, Against Mil Tec
**(Breach of Contract)**

36. Defendants re-allege and incorporate by reference their response to paragraphs 1 through 24, and 32 through 33, as though fully set forth herein.

37. Denied, with strict proof demanded thereof.

38. Denied, with strict proof demanded thereof.

39. Denied, with strict proof demanded thereof.

40. Denied, with strict proof demanded thereof.

41. Denied, with strict proof demanded thereof.

### Count III, In the Alternative, Against Restorick
**(Breach of Contract)**

42. Defendants re-allege and incorporate by reference their response to paragraphs 1 through 24, and 32 through 33, as though fully set forth herein.

43. Denied, with strict proof demanded thereof.

44. Denied, with strict proof demanded thereof.

45. Denied, with strict proof demanded thereof.

-4-

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

46. Denied, with strict proof demanded thereof.

47. Denied, with strict proof demanded thereof.

WHEREFORE, Defendants respectfully request that this Honorable Court enter judgment against Plaintiff and in favor of Defendants.

## AFFIRMATIVE DEFENSES

By way of affirmative defense, Defendants plead as follows:

1. As and for their first affirmative defense, the Defendants assert that there has been between the parties an accord and satisfaction. More specifically, the Plaintiff contacted Defendants and cancelled a substantial potion of the contract, robbing Defendants of the benefit of its bargain (i.e. profit) expected from this portion of the contract. The parties agreed that Defendants would be paid a specific price in consideration for their agreement to cancel part of the contract placed with them by Plaintiffs.

2. As and for their second affirmative defense, the Defendants assert that all of Plaintiff's claims are barred by estoppel. More specifically, the Plaintiffs, in first contracting with Defendants to obtain approximately $2.4 USD of products, and then, cancelling a substantial portion of this contract agreeing to compensate Defendants for such cancellation, cannot now be heard to complain about the contract not being fulfilled as Defendants relied to their detriment on Plaintiff's actions in promising to compensate Defendants for the aforementioned cancellation.

3. As and for their third affirmative defense, the Defendants assert that all of Plaintiff's claims are barred by the doctrine of unclean hands. More specifically, it is the Plaintiff's prior breach of the parties agreement that caused Plaintiff's damages, if any.

RICHMAN GREER, P.A.

Miami • West Palm Beach

Case 0:08-cv-60537-AJ   Document 2   Entered on FLSD Docket 04/16/2008   Page 6 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

4. As and for their fourth affirmative defense, the Defendants assert that Plaintiff's claims to rescind the parties' agreement fails in that the Plaintiff has waived its right to rescind the parties' agreement by failing to do so in a timely fashion.

5. As and for their fifth affirmative defense, the Defendants assert that Plaintiff's action for rescission is barred and or estopped by the Doctrine of Latches because Plaintiff's delay in seeking to rescind the parties' agreement has prejudiced Defendants by, among other things, causing Defendants to expend extensive resources to begin performance under the agreement prior to the Plaintiff's prior breach of the same.

6. As and for their sixth affirmative defense, Defendants assert that Plaintiff cannot state a cause of action upon which relief can be granted for rescission because after the alleged Agreement was entered into, the alleged Agreement was modified.

7. As and for their seventh affirmative defense, Defendants assert that Plaintiff, by suing for fraudulent inducement, breach of contract, and seeking the remedy of rescission, has violated the election of remedies doctrine and thus, failed to state a cause of action upon which relief can be granted.

8. As and for their eighth affirmative defense, Defendants assert that Plaintiff's claim for fraud in the inducement is barred by the economic loss rule.

9. As and for their ninth affirmative defense, Defendants assert that Plaintiff's claim for fraud in the inducement has failed to comply with the specificity requirements of Rule 9 of the Fed.R.Civ.P., and therefore, fails to state a cause of action.

10. As and for their tenth affirmative defense, Defendants assert that Plaintiff's claim for rescission fails because Defendants cannot be put back into their original position. Specifically, Defendants have incurred substantial fees in performing under the parties'

Case 0:08-cv-60537-AJ   Document 2   Entered on FLSD Docket 04/16/2008   Page 7 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

agreement, fees that are lost and cannot be returned to Defendants. Moreover, Plaintiff has attempted to tarnish Defendants' good name and reputation by making them a scapegoat for Plaintiff's own follies in failing to honor its contract with Taos.

11. As and for their eleventh affirmative defense, Defendants assert that they are entitled to a set-off against Plaintiff. More specifically, to the extent the Plaintiff is successful on its claims against Defendants, any judgment entered in favor of Plaintiff must be set-off by the amount that Plaintiff has damaged Defendants.

## COUNTERCLAIM

Counter-Plaintiffs, PAUL RESTORICK and MIL TEC MARKETING, U.K., (collectively referred to as "Mil Tec"), by and through the undersigned counsel and by way of counterclaim pursuant to Rules 7 and 13 of the Fed.R.Civ.P., hereby sues the Counter-Defendant, GENERAL DEFENSE CORP. ("General Defense"), and alleges in support thereof as follows:

## INTRODUCTORY STATEMENT

In what can only be described by the old cliché, "no good deed goes unpunished," this case is about an overzealous company who has a pattern and practice of promising that which it cannot do, undertaking that which it cannot accomplish, and then looking for a fall guy to point the finger at. In one such situation General Defense, as subcontractor, entered into a subcontract with Taos Industries to supply to it specific armaments destined for coalition forces fighting in Iraq. Realizing it was unable to honor its obligations under the subcontract, General Defense, under what it characterizes as a "help a brother out" policy, contacted Mil Tec because of its ability to obtain those items for Taos which General Defense could not. After Mil Tec already spent several hundreds of thousands of dollars in manufacturing these products, General Defense

Case 0:08-cv-60537-AJ   Document 2   Entered on FLSD Docket 04/16/2008   Page 8 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

then decided to cancel the majority of its order under the mistaken belief it could locate these items somewhere else at a better price. Then, to add insult to injury, General Defense cannot take custody of the remaining portion of the order because they had failed to obtain the required documentation and licensing. General Defense now wishes to point the finger at Mil Tec as a "fall guy" for its failures to Taos, a designation Mil Tec will not tolerate.

## JURISDICTION AND VENUE

1. The Court already maintains personal and subject matter jurisdiction over the parties and as set forth in Mil Tec's Notice of Removal, therefore no new grounds of jurisdiction are necessary for the Court to adjudicate Manhattan's Counter-Claim.

2. Venue is proper in this case as this case was removed to this Court under 28 U.S.C. §1441 as the Court which embraces the place where this action was filed in state court. Additionally, venue is appropriate in this District because this is the judicial district where General Defense maintains its principal place of business and as such, where General Defense resides.

## GENERAL ALLEGATIONS

3. All conditions precedent to bringing this action have been satisfied or waived.

4. In or around early 2006, Taos was the winner of a substantial contract with the United States Department of Defense ("USDOD") to supply armaments to coalition forces fighting in Iraq.

5. As is customary in the industry, and upon information and belief, Taos, prior to bidding on the USDOD contract obtained commitments from General Defense to provide Taos specific armaments at specific prices to assist it in fulfilling its contract with the USDOD.

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

Indeed, it is unlikely that Taos would have bid on the USDOD contract without having these prior commitments.

6. After consummating the USDOD contract, Taos communicated with General Defense regarding it previous discussions as to what armament items General Defense could provide to Taos, who in turn would provide to the USDOD.

7. General Defense promised to provide Taos with several items as set forth in both the Subcontract and the purchase order issued to General Defense from Taos as a result of the Subcontract. The purchase order is also attached to the Complaint as part of Exhibit "A."

8. This promise by General Defense was premised upon several false assumptions, including its belief that it could easily locate several of these items in Romania through international contacts it had there, at incredibly low prices. A belief that General Defense took to mean they would earn a large profit on these items because they would buy them from their Romanian contacts at a discount and then sell them to Taos at an exacerbated price.

9. Before any international armament shipments can be made, an End User Certificate ("EUC") must be obtained. An EUC is a legal document which specifies the geographic location from which international armaments are departing and the corresponding international destination at which the armaments will be arriving. Based on its belief that it had these armaments located in Romania, General Defense obtained an EUC listing the departure location as Romania and the destination location as Iraq. This means that the shipment of armaments that General Defense promised to provide to Taos had to leave Romania and had to arrive in Iraq, as the EUC was not good for any other departing location or destination.

10. If General Defense was able to locate these items in Romania, they would have been able to use their EUC and ship these items from Romania to Iraq. Unfortunately, General

Case 0:08-cv-60537-AJ   Document 2   Entered on FLSD Docket 04/16/2008   Page 10 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

Defense was unable to locate these items in Romania, notwithstanding its firm belief that it could do so.

11. Accordingly, and realizing it was now in jeopardy of failing to obtain the items which it promised to deliver to Taos, in or around February of 2007, some six months after it executed the Subcontract with Taos, General Defense contacted Mil Tec and began to inquire if Mil Tec would "help a brother out" and locate these items for General Defense so that General Defense would not be in breach of its agreement with Taos.

12. Subsequently, General Defense made a formal offer to Mil Tec to supply some of the armaments it could not locate in Romania in the form of a purchase order dated "4/3/2007." A redacted copy of this purchase order is attached to the Complaint as Exhibit "B."

13. This offer was expressly rejected by Mil Tec who made a counteroffer to General Defense by way of contract dated May 31, 2007 ("May 31, 2007 Contract"). A true and correct copy of the May 31, 2007 Contract is attached to the Complaint as Exhibit "C."

14. Pursuant to the express terms of the May 31, 2007 Contract, Mil Tec agreed to provide the following armaments:

| **ITEM** | **QUANTITY** |
|---|---|
| Slide operated belt feed modules for DShK | 1,412 |
| RPK magazine 75 round | 5,752 |
| DShK tripod | 258 |
| DShK spare parts kit | 269 |
| PKM tripods (new) | 6,073 |
| PKM Tripods (Hungary surplus) | 1,905 |

15. Moreover, and as expressly set forth in the May 31, 2007 Contract, under "price basis," "***Prices are ex-works, UK as advised***." (emphasis added) This means that the armaments would be available for pick-up at a location in the UK, and the prices did not include the

Case 0:08-cv-60537-AJ   Document 2   Entered on FLSD Docket 04/16/2008   Page 11 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

procurement of any EUC's, export licenses, import licenses, or other regulatory or legal documents. This was a task reserved to General Defense, a task which General Defense originally believed was satisfied by its procurement of the EUC listing Romania as the departure location and Iraq as the destination.

16. As common sense would dictate, the armaments would not be released in violation of domestic and international law until such time as General Defense acquired the necessary legal documentation.

17. Finally, and as is obvious from the terms of the May 31, 2007 Contract, Mil Tec was manufacturing the PKM Tripods designated as "new" while the other PKM Tripods, designated as "Hungary surplus" would be procured from a warehouse.

18. Accordingly, and as is standard in the industry, Mil Tec required a one-third down payment in the amount of $800,000 to begin the process of specially manufacturing these items.

19. The May 31, 2007 Contract was accepted by General Defense as is evidenced by its partial performance in providing the pre-payment in the amount of $800,000 as required by the May 31, 2007 Contract.

20. Thereafter, General Defense, by way of correspondence, advised Mil Tec that it no longer wanted all of the tripods which it called for in the May 31, 2007 Contract, but rather, cut that shipment down by almost two thirds because it had now located the tripods somewhere else presumably at a better price.

21. The parties then entered into an agreement whereby General Defense was to compensate Mil Tec for its cancellation of two thirds of the contract. This agreement is evidenced by the correspondence attached hereto as Exhibit "1."

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

22. Notwithstanding its breach of the May 31, 2007 Contract, Mil Tec continued to "help a brother out" and provide the reduced number of tripods and other armaments as it was contractually obligated to do so.

23. Mil Tec obtained these items pursuant to the terms of the May 31, 2007 Contract and had them located in the United Kingdom, to be released to General Defense upon the presentation of the required legal documentation.

24. This was a problem for General Defense who was unable to procure a new EUC, because the required signatories in Iraq were located in the green zone "being moved around in armored vehicles" and could not be communicated with. Accordingly, General Defense was forced to proceed under the original EUC—the items would have to depart from Romania, and arrive at the Iraqi destination.

25. Of course, to use this EUC, General Defense was required to ship these items from the United Kingdom to Romania. This presented General Defense with an additional problem in that under UK law, they were required to obtain the necessary export license—a requirement that they were unable to fulfill.

26. The appropriate executive body under UK law refused a UK export license for these goods to go from the UK to Iraq, via Romania, because the EUC provided the goods were to go from Romania to Iraq, not (i) UK to Iraq; or (ii) UK to Romania and then onward to Iraq.

27. While General Defense was allegedly trying to obtain the necessary documentation, Mil Tec, having a "pilot shipment" of the "RPK magazine 75 round" located in one of its warehouses in Germany, and as a gesture of good faith, attempted to deliver these magazines to General Defense's designated receiving agent in Romania. Upon information and

Case 0:08-cv-60537-AJ   Document 2   Entered on FLSD Docket 04/16/2008   Page 13 of 16

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

belief, German law does not require the same type of legal documentation as UK law with regards to the exportation of these items.

28. Three attempts were made to deliver the magazines to General Defense's designated receiving agent in Romania and each time the designated agents denied receipt of the magazines because General Defense failed to obtain the proper import license required for these items to be imported into Romania. Upon information and belief, accepting these goods would have subjected the receiving agents to incarceration under Romanian law. The documentation reflecting the attempted delivery of the magazines is attached hereto as Exhibit "2."

29. At all times material hereto, it was General Defense's inability to obtain that which it was responsible for, not Mil Tec's.

30. General Defense's failure to honor its obligations has caused Mil Tec damages.

## COUNT I
### Breach of Contract

31. Mil Tec re-alleges and adopts paragraphs 3 through 28 above, as though fully set forth herein.

32. Mil Tec and General Defense entered into the May 31, 2007 Contract wherein Mil Tec promised to obtain and/or manufacture the items set forth therein, and General Defense promised to compensate and take custody of said items in the United Kingdom.

33. Mil Tec did in fact obtain and/or manufacture said items and General Defense has failed to pay for said items.

34. Mil Tec has been damaged by General Defense's failure to honor its obligations under the parties' contract in that Mil Tec has been robbed of the benefit of its bargain.

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

35. Mil Tec has suffered additional damages in terms of storage, transport, and other consequential damages.

WHEREFORE, Counter-Plaintiffs, MIL TEC MARKETING U.K. and PAUL RESTORICK, herein demand Judgment against Counter-Defendant, GENERAL DEFENSE CORP., for the remainder of the contract value, for the costs incurred by Counter-Plaintiffs because of Counter-Defendant's breach including the storage costs, transportation costs, and other costs, and further seeks recovery of interest and attorney's fees, and such other relief as the Court deems just and proper.

Dated: April 15, 2008.                    Respectfully submitted,

**s/ Manuel A. Garcia-Linares**
MANUEL A. GARCIA-LINARES
(Florida Bar No. 985252)
mlinares@richmangreer.com
**s/Eric M. Sodhi**
ERIC M. SODHI
(Florida Bar No. 0583871)
esodhi@richmangreer.com
RICHMAN GREER, P.A.
Miami Center - Suite 1000
201 South Biscayne Boulevard
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
*Attorneys for Defendants*
*[Paul Restorick and Mil Tec Marketing, U.K.]*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on April 15, 2008, we filed the foregoing Answer, Affirmative Defenses and Counterclaim with the Clerk of the Court using CM/ECF. We also

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

certify that the foregoing Answer, Affirmative Defenses and Counterclaim is being served this day on all counsel of record identified on the attached Service List in the manner specified.

**s/ Manuel A. Garcia-Linares**
**s/ Eric M. Sodhi**

*General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K.*
Case No. 08-60537-CIV-JORDAN/MCALILEY

## SERVICE LIST

General Defense Corp. vs. Paul Restorick and Mil Tec Marketing, U.K..
Case No._____

United States District Court
Southern District of Florida

Robert J. Hunt, Esq.
bobhunt@huntgross.com
Hunt & Gross, P.A.
2200 N.W. Corporate Boulevard
Suite 401
Boca Raton, FL  33431-7369
Telephone:  (561) 997-9223
Fax:  (561) 997-6224
Attorneys for Plaintiff
[General Defense Corp.]
[Electronically Served Using CM/ECF
and Served by Facsimile at (561) 989-8998]